# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | CASE NO. 3:22-CR-144-DJH |
| | ) | |
| GARY W. KOCH, | ) | |
| | ) | |
| DEFENDANT | ) | |

**\* \* \* \* \* \* \***

### DEFENDANT GARY W. KOCH SENTENCING MEMO
*ELECTRONICALLY FILED*

Comes the Defendant, by counselors, Nick Mudd and Richard Meena, and respectfully submits to this Honorable Court a Sentencing Memorandum in support of law and argument, in anticipation of the Defendant's Sentencing Hearing before this Honorable Court in the United States District Court Western District of Kentucky at Louisville on September 14, 2023, at 11:30 A.M.

### PROCEDURAL AND FACTUAL BACKGROUND

On June 8, 2023, Mr. Koch pled guilty, pursuant to Indictment 3:22-CR-00144, to one (1) count of Mailing a Threatening Communication, in violation of *18 U.S.C. §876(c)*.

At the time of the offense, two neighbors of Mr. Koch lived at 2575 Trubart Lane, Louisville, KY 40216, directly behind Mr. Koch's residence. *PSR at 4:11*. The neighbors had several chickens on their property that would crow daily beginning around 5:00am and continue until nightfall. *Id. at 5:14*. As time went on, Mr. Koch became increasingly upset with the chickens, reporting in the *PSR* that daily his nerves became frazzled, and chest would become tight upon hearing the continuous noise. *Id.*

Over the next three (3) months, Mr. Koch tried to solve the issue by calling the city on

three (3) separate occasions to report the disturbance, but nothing was done. *Id.* On March 1, 2022, Mr. Koch finally snapped. He sent an anonymous threatening letter to the home of the victim, hoping to get the residents of 2575 Trubart Lane into trouble (forcing them to move and causing the crowing chickens to stop). *Id.* The victim received the letter on March 4, 2022, and notified the FBI. *Id. at 4:9*.

When confronted by law enforcement, Mr. Koch admitted to writing the letter. *Id. at 5:13*. The investigation, however, did not reveal any evidence that he had any intent whatsoever to carry out the threat. *Id. at 4:12*. Mr. Koch sent the letter simply in hopes of getting the residents of 2575 into trouble, putting an end to the crowing of chickens. *Id at 5:14*. Mr. Koch has admitted guilt to the FBI, and to this Honorable Court. He is ashamed of his actions and stands before this Court accepting full responsibility.

## THE DEFENDANT IS AN EXCELLENT CANDIDATE FOR FEDERAL PROBATION AND SUPERVISED RELEASE, OR PROBATION WITH A PERIOD OF HOME DETENTION AS A SUBSTITUTE FOR INTERMITTENT CONFINEMENT

Mr. Koch stands before this Cout as a 72-year-old man with zero prior criminal history before the current case. He's never even had a speeding ticket. He graduated high school, got a degree, and worked his entire life at TARC as an electronics technician. He was a responsible employee, putting away money in his retirement, going to work every day, and staying loyal to his company. He has spent most of his life keeping to himself, taking care of his mother, and being a model citizen. He has no children and no dependents to support.

In the following memo, the undersigned counselors respectfully pray this Court will sentence Mr. Koch to either a term of probation, or a term of probation that will substitute home detention for imprisonment according to the prescribed schedule. Such a sentence is fair, just,

and satisfies all the statutory objectives of *§3334(a)*. Mr. Koch accepts full responsibility for his actions. He is deeply embarrassed, ashamed, and humiliated. He prays this Court have mercy on him on a life that up until this case was that of a model citizen, diligent worker, and responsible adult.

## I. SENTENCING ENHANCEMENT(S) AND REDUCTION(S) OF SPECIFIC OFFENSE CHARACTERSITICS OF USSG *§2A6.1(a)*; AND APPLICATION OF U.S.S.G. AMENDMENTS EFFECTIVE NOVEMBER 1, 2023, APPLICABLE TO MR. KOCH

All parties agree pursuant to **USSG *§2A6.1(a)***, the Mr. Koch's Base Offense Level is twelve (12). **PSR 5-6:19-28**. The parties further agree that Mr. Koch is entitled to a two-level reduction for acceptance of responsibility, leaving him at an agreed offense level of ten (10). **Id**. There is a dispute, however, regarding certain reductions.

### A. THE DEFENDANT SHOULD RECEIVE A 2-POINT REDUCTION PURSUANT TO USSG §2A6.1(B)

Under the specific offense characteristics of USSG §2A6.1(a), USSG §2A6.1(b)(6) should apply, and Mr. Koch should be entitled to a four (4) point reduction, putting him at a level six (6). USSG §2A6.1(b) states:

(b)     Specific Offense Characteristics
    (1)      If the offense involved any conduct evidencing an intent to carry out such threat, increase by 6 levels.
    (2)      If (A) the offense involved more than two threats; or (B) the defendant is convicted under 18 U.S.C. § 1521 and the offense involved more than two false liens or encumbrances, increase by 2 levels.
    (3)      If the offense involved the violation of a court protection order, increase by 2 levels.
    (4)      If the offense resulted in (A) substantial disruption of public, governmental, or business functions or services; or (B) a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense, increase by 4 levels.
    (5)      If the defendant (A) is convicted under 18 U.S.C. § 115, (B) made a public threatening communication, and (C) knew or should have known that the

> public threatening communication created a substantial risk of inciting others to violate 18 U.S.C. § 115, increase by 2 levels.
>
> (6)    If (A) subsection (a)(2) and subdivisions (1), (2), (3), (4), and (5) do not apply, and (B) the offense involved a single instance evidencing little or no deliberation, decrease by 4 levels.
>
> *USSG §2A6.1(b)*.

Here there was never any conduct evidencing an intent to carry out the threats in the letter. The PSR page four (4) section twelve (12) states: "The investigation did not reveal *any* evidence the defendant intended to carry out the threat." The offense did not involve two (2) or more threats; it involved a single letter. The offense did not involve violation of a Court protection order. There was no substantial disruption of public, governmental, or business functions or any substantial expenditure of funds to cleanup, decontaminate, or respond to the offense. The defendant was not convicted under 18 U.S.C. §115.

The main issue between the parties under this subsection is whether the charged conduct involved "…a single instance evidencing little or no deliberation…" The undersigned counselors believe the way the statute is to be interpreted with the present facts, the sentence reduction applies.

This was a single instance. Mr. Koch is only charged with one (1) count. There is no evidence he ever sent any other threatening letters to the victim. The facts show Mr. Koch, after months of being upset and angry over the crowing of chickens, finally snapped. He sat down and angrily wrote out and mailed a threatening letter. He did not plan to harm anyone. He made no plans to carry out the threat. He did not plan how to get away with the offense. He wrote the letter in his own handwriting and mailed it. As Mr. Koch has stated to defense counselors multiple times when asked why he did this, at one

point after hearing the chickens crowing: "I just finally snapped."

All these things go to the point that Mr. Koch put little or no deliberation into writing the letter. As noted in the PSR: "[T]he defendant discussed the neighbors' roosters. He described that they were directly behind his house, and they started crowing around 5:00am which did not stop until nightfall. The defendant states the constant crowing by the roosters frazzled his nerves and caused his chest to become tight. He reports calling the city three times over the period of three months, but nothing was done. The defendant admitted to writing the threatening letter to [victim] with his neighbor's return address…" ***PSR at 5:14***. There was no grand scheme. No plan. This was a senseless, irrational act out of anger, rage, and emotion. This is behavior completely unnormal for a man like Mr. Koch. The facts strongly support the argument that this was a single instance of conduct of a man who finally had enough and made an emotional, irrational, and foolish decision with very little thought.

The background commentary to ***§2A6.1(b)*** delineates that the focus of the application under this section should be the intent and likelihood a defendant will carry out the threat. The Commentary states: "These statutes cover a wide range of conduct, the seriousness of which depends upon the defendant's *intent and the likelihood that the defendant would carry out the threat*. The specific offense characteristics are intended to distinguish such cases." ***USSG §2A6.1(b), Background***. These specific offense characteristics, none of which apply to Mr. Koch, should fall in his favor since the investigation revealed there was no evidence Mr. Koch intended to carry out the threat. ***PSR at 4:12***. If the Court accepts this request, Mr. Koch is entitled to a four-level

reduction, putting him at level six (6), in Zone A.

## B. UNITED STATES SENTENCING GUIDELINES FORTHCOMING NOVEMBER 1, 2023, AMENDMENTS

The United States Sentencing Commission recently adopted proposed amendments to the Sentencing Guidelines for the first time in five (5) years. The proposed amendments would serve to change federal sentencing in several significant respects, some of which apply directly to Mr. Koch. While these amendments do not become effective until November 1, 2023, the undesigned request this Court to heavily consider imposing the undermentioned changes.

### 1. MR. KOCH IS A ZERO-POINT OFFENDER ENTITLED TO A TWO-LEVEL REDUCTION PURSUANT TO USSG AMENDMENT §4C1.1

Mr. Koch has no prior criminal history and has a total criminal history score of zero. *PSR at 6-7:30-36*. Under the new USSG amendments, the undersigned would request this Court rule that Mr. Koch is a Zero-Point Offender pursuant to to *PART C — ADJUSTMENT FOR CERTAIN ZERO-POINT OFFENDERS §4C1.1.* To qualify, an offender must meet the following criteria:

- (1) the offender did not receive any criminal history points from Chapter Four, Part A;

- (2) the offender did not receive an adjustment under §3A1.4 (Terrorism);

- (3) the offender did not use violence or credible threats of violence in connection with the offense;

- (4) the offense did not result in death or serious bodily injury;

- (5) the instant offense of conviction is not a sex offense;

- (6) the offender did not personally cause substantial financial hardship;

- (7) the offender did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

- (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

- (9) the offender did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense);

- and (10) the offender did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. §848.

  ***USSG §4C1.1 as amended November 1, 2023.***

In the present case:

- (1) Mr. Koch did not receive any criminal history points from Chapter Four, Part A;

- (2) Mr. Koch did not receive an adjustment under §3A1.4 (Terrorism);

- (3) Mr. Koch did not use violence or credible threats of violence in connection with the offense;

- (4) the offense did not result in death or serious bodily injury;

- (5) the instant offense of conviction is not a sex offense;

- (6) Mr. Koch did not personally cause substantial financial hardship;

- (7) Mr. Koch did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

- (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

- (9) Mr. Koch did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense);

- and (10) Mr. Koch did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. §848.

The main issue between the parties is whether Mr. Koch used "credible threats of violence" in connection with the offense. He did not, and the investigation and evidence support this argument.

The PSR states: "The investigation did not reveal any evidence the defendant intended to carry out the threat." ***PSR at 4:12***. If nothing in the investigation revealed any evidence that he intended to carry out the threat, then there was never any credible threat of violence, and he is entitled to the two-point reduction.

## 2.  IF THE COURT HOLDS THAT MR. KOCH IS A ZERO-POINT OFFENDER, THE USSG AMENDMENTS SUGGESTS MR. KOCH BE GIVEN A SENTENCE OTHER THAN A SENTENCE OF IMPRISONMENT

The adopted amendments state that for Zero-Point Offenders that qualify under *USSG 4C1.1*, a sentence other than a sentence of imprisonment is generally appropriate, if they are in Zone A or B. The parties agree that at worst, Mr. Koch is a Zone B offender. *United States Sentencing Memo, pg. 2*; *PSR 6:33*. The amended Application Notes regarding a term of imprisonment for Zero-Point Offenders now states:

> 10. Zero-Point Offenders.— (A) Zero-Point Offenders in Zones A and B of the Sentencing Table.—If the defendant received an adjustment under §4C1.1 (Adjustment for Certain Zero-Point Offenders) and the defendant's applicable guideline range is in Zone A or B of the Sentencing Table, a sentence other than a sentence of imprisonment, in accordance with subsection (b) or (c)(3), is generally appropriate. See 28 U.S.C. § 994(j).
> **USSG §5C1.1 Imposition of a Term of Imprisonment, Application Notes: 10. Zero-Point Offenders as amended November 1, 2023**.

Because of this law change, the undersigned respectfully requests this Honorable Court consider the above and sentence Mr. Koch to a term of probation, or a term of probation with Home Detention.

## II.     THE STATUTORY SENTENCING FACTORS

### A.  SETENCING UNDER *BOOKER*

Under *Booker*, sentencing courts must treat the guidelines as just one of several sentencing factors set forth in *18 U.S.C. §3553(a)*.

The primary directive in *Section 3553(a)* is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." *Section 3553(a)(2)* states that such purposes are:

(A)     to reflect the seriousness of the offense, to promise respect for the law, and to

provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, *§3553(a)* further directs sentencing courts to consider the following factors:

1)  "the nature and circumstances of the offense and the history and characteristics of the defendant" (*§3553(a)(1)*);

2)  "the kinds of sentences available" (*§3553(a)(3)*);

3)  "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (*§3553(a)(6)*); and

4)  "the need to provide restitution to any victims of the offense." (*§3553(a)(7)*).

Other statutory sections also give the district court discretion in sentencing. Under *18 U.S.C. §3582*, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section *3553(a)* factors, the judge is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation."

Under *18 U.S.C. §3661*, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or

alcohol dependence, and lack of guidance as a youth. ***See U.S.S.G § 5H1; see also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. 2005) (Simon, K.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age); citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004)***.

In every case, then, a sentencing court must now consider all of the *§ 3553(a)* factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in *§ 3553(a)*, these statutory sentencing factors should generally trump the guidelines. ***See United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range)***.

## B. <u>APPLICATION OF THE STATUTORY SENTENCING FACTORS TO MR. KOCH AND THE FACTS OF THIS CASE</u>

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purpose.

### 1. <u>THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE OFFENDER</u>

#### (a) <u>NATURE AND CIRCUMSTANCES OF THE OFFENSE</u>

Mr. Koch takes full responsibility for his actions. He has availed himself of this Court, followed all Court orders, and accepted full responsibility. When confronted by the FBI, "...the

defendant confessed to authorities." ***PSR at 5:13***. The present offense is serious, and leaders in our community should be free and unencumbered by threats of violence and fear while running a campaign and executing their duties as elected officials. However, the circumstances of the offense show an elderly man who snapped over crowing chickens, wrote a threatening letter, but which the investigation revealed no evidence suggesting he intended to carry out the threat.

He is not a criminal mastermind or a career criminal. He understands the severity of his situation and the criminality of his conduct and is deeply embarrassed. As he told the Probation Officer during his PSR interview: he is "totally ashamed to my very core" for his actions. ***PSR at 5: 14***. Mr. Koch, therefore, respectfully requests this Court strongly consider probation, or home detention as a substitution for incarceration.

**(b) <u>History and Characteristics of Mr. Koch</u>**

Mr. Koch was a model citizen for the first seventy (70) years of his life. It goes without saying that this offense is out of character for someone like him with no criminal history, a lifetime of full-time employment, and a productive and contributing member of society. He is college educated, was a diligent employee at TARC for almost three (3) decades, and fiscally was responsible saving for his retirement which now supports him. He has ongoing health issues which need to be monitored (addressed below) and is very likely never to reoffend in any capacity. His history and personal characteristics strongly lend themselves to suggesting a term of probation or probation with home confinement being appropriate in this case.

**(c) <u>Pretrial Supervision Without Any Violation</u>**

As of the filing of this memo, Mr. Koch has not had a single pre-trial supervision violation. He has been completely cooperative with Probation and Parole, with his counselors, with the Court, and has demonstrated his ability to follow all rules placed on him.

**(d) Community Ties and Responsibilities**

Mr. Koch is a lifetime resident of Louisville, KY. He owns a home which is fully paid off, and has a few close friends with whom he associates. He is under the care of multiple doctors in the city and has spent his entire life here. On any sort of supervision Mr. Koch is highly likely to fully comply and never leave the city without permission.

**(e) Physical/Medical Condition**

Mr. Koch has had multiple health issues in the last decade, many of which he continues to be treated by local physicians here in Louisville. In 2015 he was diagnosed with prostate cancer. *PSR at 7:43*. He ultimately completed nine (9) weeks of radiation to reduce the cancer in his body and stop it from spreading. According to Mr. Koch, the cancer still lives in his body, but his physician continues to closely monitor his prostate specific antigen levels for any signs of a recurrence. *Id*. He has a history of hernia, constipation, and cysts. *Id*. He recently underwent another surgery, a few days before he entered a plea in this case, to remove another cysts from his body. *Id*. Mr. Koch is also on a medically recommended restricted strict gluten-free diet due to celiac disease. *Id*. He also has difficulty sleeping, leading to high stress levels, as well as dental and heart issues. *Id at 8:44-46*. Because he is still under a physician's care for the aforementioned issues, counselors strongly urge this Court to consider any sentence that would allow Mr. Koch to continue to see his doctors regularly, and not exacerbate any existing health issues he is currently facing.

**(f) Mental and Emotional Health**

At the outset of this case a mental exam was requested by the United States and ordered by this Honorable Court. The Defense had no objection. The Court allowed a private examiner hired by the defense to evaluate Mr. Koch and provide a forensic evaluation. Mr. Koch had never

previously been evaluated or treated for any mental health related issues throughout his lifetime.

Mr. Koch was evaluated by Dr. Lauren Kaplan over three separate days in March and April of 2023. Dr. Kaplan concluded in her report dated June 6, 2023, that Mr. Koch is competent to stand trial. However, of note were the results of the Millon Clinical Multiaxial Inventory, Third Edition (MCMI-III) exam which measures Clinical Personality Patterns and Clinical Syndromes. She notes:

> "Mr. Koch's profile suggests a tendency to self-deprecate his self-worth, an emotional sluggishness, a lack of positive affect, feelings of discomfort in most interpersonal relationships, and a general social awkwardness…His results portrayed him as a sad man who experiences pervasive dysthymia with recurring periods of anxiety…It appears Mr. Koch feels trapped in the worst of his inner and outer worlds, seeking to avoid both the distress that interpersonal relations bring and the anxiety-ridden and painful memories that are easily reactivated by minor social stressors. This dynamic is especially significant to an understanding of Mr. Koch because it means turning away from his external environment brings him little peace or comfort. Further complicating this picture is the fact he has few avenues for psychic gratification, tension relief, or conflict resolution…[Further], Mr. Koch's profile revealed a significant elevation on the Anxiety scale. Consistent with symptoms of an anxiety-related disorder, he reported experiencing fatigue, insomnia, muscular tension, distracted thinking, and as general dysphoric mood. Shy and socially uncomfortable, he is likely plagued by self-doubt and especially hypersensitive to public humiliation or reproach. As such, he may lack sufficient self-esteem to respond to humiliating events by expressing anger or resentment he might feel."
> **_Forensic Evaluation of Gary Koch, by Dr. Lauren Kaplan, June 6, 2023, pg. 4_**.

This high level of constant anxiety has a very negative impact on Mr. Koch's ability to sleep, and naturally would affect his ability to properly function. He recently began taking 100 milligrams of trazadone nightly to help with sleep. His long-time friend, Jeanette Cox, has even noticed the lack of sleep effects. She told Probation and Parole that Mr. Koch "…has gone years with only 3-4 hours of sleep each nigh[,]" and that "[d]ue to the lack of sleep, she believes [Mr. Koch] may have depression or a general lack of interest." **_PSR 8:46_**.

While Dr. Kaplan did find Mr. Koch competent, she did conclude that he does suffer from a mental disease. The undersigned anticipated submitting a follow-up report to this Honorable Court from Dr. Kaplan. However, due to personal reasons, she was not able to complete it at the time of this filing. Mr. Koch's Counselors will substitute the record as soon as it becomes available. Regardless, Mr. Koch asks the Court to take the preceding information into account.

## (g) <u>Educational and Vocational Skills</u>

Mr. Koch's excellent educational background and almost three (3) decades of stable employment justify a probationary sentence, or one with probation and home detention.

Sentencing courts are required to consider such factors:

> The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines. ***See United States Sentencing Commission, Guidelines Manual 5H1.1-6, 11, and 12 (Nov. 2006).n3***. These are, however, matters that *§ 3553(a)* authorizes the sentencing judge to consider. ***See, e.g., 18 U.S.C. § 3553(a)(1)***. ***Rita v. United States, 551 U.S. 338, 364-365 (2007) (Stevens, J. concurring)***; ***see also United States v. Jarvi, 537 F.3d 1256, 1263 (10th Cir. 2008) ("We have now held that district courts have broad discretion to consider individual characteristics like age, employment, and criminal history in fashioning an appropriate sentence under 18 U.S.C. § 3553(a), even when disfavored under the Guidelines or already accounted for in another part of the calculation")***.

Mr. Koch graduated high school, has a degree, and worked faithfully for a local company. Statistical studies in the field of criminal justice have shown that the higher the level of education a convict has, the lower the chance they will re-offend:

> The post-release employment rate was 64.4 percent among non-violent offenders who had a 2-year college education. The recidivism rate among non-violent offenders who had a 2-year college degree was 32.9 percent.
> ***"The Post-Release Employment and Recidivism Among Different Types of Offenders With A Different Level of Education: A 5-Year Follow-Up Study in Indiana", John M. Nally, Ed.D., Susan Lockwood, Ed.D., Taiping Ho, Ph.D., and Katie Knutson, M.P.A.***, *Justice Policy Journal, vol. 9, no. 1, Spring 2012*, *pg. 13-14*.

Because of this, Mr. Koch's chances of recidivism are extremely low. His educational and employment history strongly indicate that statistically he will very likely never reoffend.

## (h) <u>Prior Criminal History</u>

Mr. Koch has spent his life up until the present case as a law-abiding citizen. He has no

juvenile adjudications, no other adult criminal convictions, no other criminal conduct noted, and no other arrests or pending charges. He's never even had a traffic ticket. Research performed by the United States Sentencing Commission has shown that defendants like Mr. Koch who have no prior criminal convictions have an even lower rate of recidivism than those individuals in criminal history category I who do have prior criminal history. Defendants like Mr. Koch are "the most empirically identifiable group of federal offenders who are least likely to offend." *United States Sentencing Commission, Recidivism and the "First Offender", May 2004*. First offenders recidivate less frequently in a way that's not considered by the sentencing guidelines. *See "A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score", at 14-15, available at http://www.ussc.gov/publicat/RecivismSalientFactorCom.pdf; see also U.S. v. Cabrera, 567 F. Supp. 2d 271 (D. Mass. 2008) (significantly reducing a sentence based on the fact that defendants with zero criminal history points are less likely to recidivate than other defendants in criminal history category I).*

This lack of prior criminal history also means that a sentence of incarceration carries a more significant impact upon Mr. Koch than it would upon an individual with a prior history. This was the rationale behind the court's holding in *U.S. v. Baker* in upholding a sentencing reduction based on the finding that "a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned.*" U.S. v. Baker, 445 F.3d 987, 992 (7th Cir. 2006)*. "Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to reoffend." *U.S. v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005)*.

The mere fact that Mr. Koch is becoming a convicted felon is more than sufficient punishment in this case to satisfy the statutory requirements. Mr. Koch is losing his right to vote, his right to hold office, his right to sit on a jury, and his right to possess a firearm. These other "collateral consequences" of a felony conviction, under both state and federal law, are often the strongest punishment for people like Mr. Koch.

> "Criminal conviction brings with it a host of sanctions and disqualifications that can place an unanticipated burden on individuals trying to re-enter society and lead lives as productive citizens. The impact of these "collateral consequences" is often discussed in the context of offender re-entry....[c]ollateral consequences tend to last indefinitely, long after an individual is fully rehabilitated."
> ***"Beyond the Sentence - Understanding Collateral Consequences", Sarah B. Berson, National Institute for Justice,***
> ***http://www.nij.gov/journals/272/pages/collateral-consequences.aspx.***

Mr. Koch is completely ashamed of his actions. This behavior is so out of character, his likelihood of ever being before any Court again is almost zero.

## 2. THE NEED FOR THE SENTENCE IMPOSED TO PROMOTE CERTAIN STATUTORY OBJECTIVES

### (a) To Reflect The Seriousness Of The Offense, Promote Respect For The Law, And Provide Just Punishment For The Offense

A term of probation or a term of probation with a period substituting home detention for confinement would be sufficient but not greater than necessary to comply with the purposes set forth in *18 USC 3553 §(a)(2)*. This conviction has brought complete shame upon the reputation and character of Mr. Koch. Prior to this offense he was a model and upstanding citizen throughout over seventy (70) years of his life. He deeply regrets his actions. Becoming a convicted felon, tarnishing his reputation, losing his right to ever own or possess a firearm, and losing his right to vote are all adequate punishments and deterrents for Mr. Koch that reflect the

serious nature of the offense, provide a just punishment, and promote respect for the law.

**(b) <u>To Afford Adequate Deterrence to Criminal Conduct</u>**

Mr. Koch understands the significance of his actions and the serious consequences he is facing. The disgrace brought upon him has and will deter him from ever committing any further crimes. He is utterly embarrassed to be before this Honorable Court.

**(c) <u>To Protect the Public From Further Crimes of the Defendant</u>**

Mr. Koch is at an extremely low risk to re-offend, based upon a variety of factors (prior employment, fiscal responsibility, physical ailments and health, and lack of any prior criminal history). The plea itself is sufficient to deter any future criminal conduct by Mr. Koch. Sentencing Mr. Koch to a term of probation, or to a term of probation with home confinement would protect the public. Recidivism data analyzed by the Sentencing Commission shows that offenders with zero criminal history points have considerably lower recidivism rates than other offenders, including offenders with one criminal history point. ***See U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released2010***. Among other findings, the report concluded that "zero-point offenders" were less likely to be rearrested than "one point" offenders (26.8% compared to 42.3%), the largest variation of any comparison of offenders within the same Criminal History Category.

**(d) <u>To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner</u>**

Mr. Koch is college educated, worked hard for several years, and was fiscally responsible throughout his career. He now has a comfortable retirement income and does not depend on

family or the Government for financial support. He still faces multiple health problems, however, which can best be addressed by a term of probation or probation with home detention. A term of imprisonment would not best serve his medical needs, nor would it serve any educational or vocational purpose.

### (e) The Need To Provide Restitution

The undersigned are not aware of any restitution in this case. However, if there is, Mr. Koch would be willing to pay all of it in full, immediately.

### 3. THE KINDS OF SENTENCES AVAILABLE (*§ 3553(a)(3)*)

In ***Booker***, the Supreme Court severed and excised ***18 U.S.C. § 3553(b)***, the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guideline range. ***Booker, 125 S. Ct. at 756***. This renders the sentencing guidelines advisory. ***Id.*** Therefore the Court has the authority to impose any sentence it finds satisfies the statutory sentencing requirements imposed by Congress. Because Mr. Koch is at most in Zone B, and given the above addressed issues, this Court has authority to sentence Mr. Koch to (1) a sentence of imprisonment; (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the prescribed schedule, provided that at least one month is satisfied by imprisonment; (3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment; or (4) a term of probation with any conditions the Court deems appropriate per the USSG amendments effective November 1, 2023.

## 4. THE NEED TO AVOID UNWARRANTED DISPARITIES

The undersigned counselors do not have empirical data to supply to the Court regarding sentencing statistics of defendants with similar records who have been found guilty of similar conduct. Mr. Koch is unique here in that he went seventy (70) years of life as a model, responsible, hard-working citizen. The present offense is out of character, and one that he is very humiliated over. Sentencing Courts are, of course, tasked with the responsibility of treating those that come before them as individuals. ***See Koon v. United States, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.").*** Mr. Koch prays that given his unique circumstances and facts before this Honorable Court, he be given the privilege of probation, or probation with home detention.

## III. DOWNWARD DEPARTURE AND/OR A VARIANCE FOR MR. KOCH

The undersigned respectfully requests this Court consider granting Mr. Koch either a downward departure or a variance, to six (6) points or less, to put him in Zone A, and allow him to be given probation or probation with home confinement.

## A. DOWNWARD DEPARTURE: MR. KOCH SHOULD GET A DONWARD DEPARTURE BASED ON HIS AGE, PAST AND PRESENT MEDICAL AND MENTAL HEALTH ISSUES, AND LENGTHY EMPLOYMENT HISTORY

Pursuant to USSG §5H1.1 (Age), §5H1.3 (Mental and Emotional Conditions), §5H1.4 (Physical Condition), counselors for Mr. Koch believe his age, past and present medical conditions, and past and present mental health issues may warrant a downward departure. In

addition, Courts have also recognized that employment history is a valid justification for a below-guideline sentence, and respectfully ask this Court to take Mr. Koch's prior years of employment into account when considering a downward departure. ***See Kimbrough v. United States, 552 U.S. 85, 110 (2007) ("second, the [district] court considered Kimbrough's 'history and characteristics.' § 3553(a)1) . . . [noting] that Kimbrough has no prior felony convictions, that he had served in combat during Operation Desert Storm and received an honorable discharge from the Marine Corps and that he had a steady history of employment")(emphasis added); United States v. Sota, 2010 U.S. Dist. LEXIS 53118, \*14-15 (E.D. Wis. April 30, 2010); United States v. Garza, 2008 U.S. Dist. LEXIS 100400, \*8 (N.D. Ill. December 4, 2008).***

## B. <u>VARIANCE: MR. KOCH SHOULD GET A VARIANCE SINCE THERE ARE FACTORS THAT WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM</u>

Courts may impose a variance outside of the guideline range after consideration of all relevant departure provisions. ***Gall v. United States, 552 U.S. 38, 49 (2007); see also supra note 11***. The ability to vary preserves a district court's ultimate ability to impose a sentence that it views is "sufficient, but not greater than necessary" to serve the goals of sentencing in 18 U.S.C. § 3553(a), regardless of the guideline range. ***See, e.g., United States v. Ortiz-Pérez, 30 F.4th 107, 112 (1st Cir. 2022) ("It is the sentencing court's prerogative—indeed, its duty—to 'draw upon [its] familiarity with a case, weigh the factors enumerated in [section] 3553(a), and custom-tailor an appropriate sentence.' " (alterations in original) (quoting United States v. Flores-Machciote, 706 F.3d 16, 20 (1st Cir. 2013))).***

Mr. Koch's lack of any prior criminal history, and the nature and circumstances of the present offense are grounds for the Court to grant a variance, pursuant to the ***18 USC 3553(a)*** factors.

## CONCLUSION

Mr. Koch apologizes to the victim, the victim's family, the neighbors involved, and all those involved who had to take the time to investigate, prosecute, and preside over this case. Mr. Koch takes full responsibility for the decisions has made, the disgrace he has caused himself, and the consequences he must face. If the Court feels prison is appropriate, Mr. Koch has accepted this and will respect that decision. The undersigned counselors pray this Court will allow him to stay out of prison and impose any alternative sentence this Honorable Court deems appropriate.

**WHEREFORE**, the undersigned respectfully asks this Honorable Court to consider the law and arguments supplied herein, as part of Mr. Koch's Sentencing Hearing.

Respectfully submitted,

/s/ NICK MUDD

_____

NICK MUDD
Attorney for Gary Koch
MUDD LEGAL GROUP, PLLC
600 W Main St
Suite 300
Louisville, Kentucky 40202
(502) 795-2529

/s/ RICHARD MEANA

_____

Richard Meana
Attorney for Gary Koch
125 South 7th Street
Louisville, KY 40202
(502) 584-1403

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing motion was filed on Tuesday, September 12, 2023, with service to all counselors of record, via ECF.

/s/ NICK MUDD

_____

NICK MUDD
Attorney for Defendant Gary Koch